IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANTONIO TAYLOR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 14-CV-1302-SMY-PMF |
| | ) |
| RICH WATSON, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Before the Court is Defendants' Motion for Summary Judgment (Doc. No. 26). Plaintiff Antonio Taylor is challenging the constitutionality of the conditions he experienced while detained at the St. Clair County Jail between July 2012 and May 2014. Specifically, he maintains that he was exposed to overcrowded conditions, insects, vermin, foul odors and peeling paint. He further claims that he did not receive sufficient food, sufficient access to a law library or sufficient opportunity to engage in recreational activities. The motion is opposed (Doc. No. 43).

Summary judgment will be entered if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). The facts and all reasonable inferences are drawn in favor of plaintiff, the nonmoving party. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011).

Because Taylor was a pretrial detainee, his rights are protected under the Fourteenth Amendment's due process clause, which protects pretrial detains from conditions that amount to punishment. The Court of Appeals has found it appropriate to evaluate detainee due process claims under the "deliberate indifference" standard gleaned from Eighth Amendment jurisprudence. *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005).

In order to prove his due process claim against these defendants, Taylor must satisfy two elements. The objective element requires evidence that adverse conditions resulted in the denial

of a basic human need, such as adequate food, clothing, bedding, sanitation, shelter, medical care or physical safety. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The subjective element requires proof that these defendants knew about conditions posing a serious threat to Taylor's health and responded with deliberate indifference. *Id.*, 511 U.S. at 834. As to the objective element of proof, jail conditions must present a substantial danger of harm. *French v. Owens*, 777 F2d 1250, 1255 (7th Cir. 1985). As to the subjective element, deliberate indifference can be compared to criminal recklessness, which requires conduct approaching total unconcern for a person's welfare in the face of serious risks. *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992). In evaluating the evidence supporting Taylor's due process claim, the Court will focus on the period of time that Taylor was housed in Lower Level B, as Taylor was confined to this area for the majority of the detention time and his deposition testimony shows that he experienced the worst conditions in that area of the jail facility (July 4, 2012 – February 21, 2013). During this period of detention, Taylor was detained on a charge of aggravated vehicular hijacking. He was represented by attorney Justin Whitton on that charge. He had the opportunity to visit with his attorney and did so on one or two occasions.

He was housed at the St. Clair County Jail in Lower Level B. This area was described as a "large sized dorm room" converted from a garage, "kind of big," and a "nice size." It was occupied by between 20 and 30 people. Taylor felt this was too many people and noticed a lot of friction. In addition to bunk beds, the area was furnished with five or six tables, benches, a television and two phones. Apart from the living quarters, there was a personal area. The space was open and large enough to allow for some types of exercise, including walking, working out, horseplay, flips and pushups. The space did not allow Taylor to pass time by playing basketball as he wished. While there was a gymnasium, it was frequently used as overflow housing and was not available to Taylor for sports or recreation.

Taylor received a mattress and blankets, and was assigned to the bottom level of a bunk

bed, which was elevated off the ground. The bunk beds were arranged into cubicles, so there was another individual above him and another individual next to him. Taylor stayed up during the night and slept during the day. Taylor saw mice, ants, and flies but the numbers were not overwhelming. Anderson Pest Solutions, a professional exterminator, was retained to provide insect and rodent control. The monthly services included visits, inspection and spraying to address problems. Taylor discovered one bag of chips that had been gnawed by a mouse in a small area.

Lower level B had sinks with running water and showers that operate by pushing timing buttons. Across from the showers, there were toilets that were programed to prevent simultaneous flushing. A level of privacy was obtained by hanging a blanket in front of the shower or toilet stall. There were two stalls with urinals and two stalls with toilets. The shower walls were moldy and the shower drains were frequently clogged. Taylor would remove standing water with a cup or bowl into a bucket and flush it down the toilet. There was one drain that reeked like a sewer. One toilet and one urinal were broken for a period of time. The broken urinal smelled very bad despite efforts to contain or mask the odor. Taylor observed small flies coming out of the broken urinal. Taylor had access to personal necessities, including toilet tissue, a face towel, a dry towel, soap, toothbrush and toothpaste.

Equipment was maintained by The Public Building Commission of St. Clair County, which worked off of request forms submitted by the jail's shift supervisors. Approximately once per week, cleaning supplies were provided including a water/bleach/disinfectant solution, towels, a mop, a broom and a dustpan. Plaintiff and other inmates often found the supplies to be insufficient for cleaning. They improvised by using mop water as a toilet/drain cleaner and mixed shampoo and detergent together to make a cleaning solution. The shower/toilet area remained moldy and reeked like a sewer for months at a time.

Food service was provided by Aramark Correctional Services and delivered by

3

correctional officers. Taylor was served three meals a day with unsweetened tea. He ate some of the food that was served. The portions were small, but the portion size was attributed to kitchen workers rather than the defendants. On one occasion, Taylor chipped his tooth on a rock while eating beans. He was seen by a nurse who provided Taylor with medication for pain relief. A report was generated regarding this incident.

Taylor visited with family members and made commissary purchases of food and hygiene supplies. He had the opportunity to leave his housing unit to attend chapel. He did not try to visit the law library during this period of detention. He observed paint peeling from the walls, table, bars, toilet area, shower area and ceiling but did not consider this to be problematic. He noticed staff efforts to repaint in anticipation of an inspection.

Although he was never diagnosed with a digestive ailment, his stomach was upset for a couple of days. He developed an itchy rash believed to be eczema, which resolved with medical treatment (2.5% hydrocortisone cream) but would then recur. Taylor suspects that the rash may have come from the unsanitary shower.

### I.     Objective Element

Viewing the evidence in Plaintiff's favor, the facts could reasonably support a finding that Taylor was deprived of his basic human need for a sanitary shower area during his confinement in Lower Level B. The combination of deficient sanitation/cleaning supplies, moldy shower walls, standing water, an open drain, broken plumbing for months at a time, persistent odors and a recurring rash linked to the lack of sanitation could support a finding in Taylor's favor on this element of his due process claim.

The Court is not persuaded that the other adverse conditions (overcrowding, vermin, insects, recreation, law library access, food, peeling paint) were harsh enough to deprive Taylor of the minimal civilized measure of life's necessities. Taylor had his own bunk; open dorm space allowed regular movement and exercise; Taylor had opportunities to leave the housing unit for

4

visits; Taylor was fed three times a day and supplemented his nutrition with commissary purchases; Taylor's personal exposure to vermin and insects was relatively mild and did not pose a serious threat to his health or safety; and Taylor had access to a law library and was also represented by counsel.

## II. Subjective Element

Defendant Richard Watson argues that plaintiff cannot demonstrate that he was personally responsible for a Constitutional deprivation. Defendants Bridges, Dinges, Nichols and Reid argue that plaintiff has not shown their deliberate indifference to a risk of serious harm. Plaintiff responds that the facts create an issue for trial.

On summary judgment, facts verified in Taylor's Complaint are considered as evidence. *Ford v. Wilson*, 90 F.3d 245, 247 (7th Cir. 1996). The facts alleged reasonably permit an inference that the defendants were aware that Taylor was "being subjected to medical issues due to the filthy and poor living conditions" and personally knew about medical issues stemming from unsanitary conditions and "did absolutely nothing to correct them" (Doc. No. 2). However, the only evidence that Taylor suffered harm due to his exposure to unsanitary conditions is that he developed an itchy rash on his leg that resolved with medical treatment and then recurred (Doc. No. 43-2, pp. 72-73). A recurring itchy rash, while uncomfortable and annoying, would not reasonably lead any the defendants to the conclusion that Taylor faced a substantial risk of serious harm, particularly where medical attention was offered and provided temporary relief. Accordingly, the Court is satisfied that Taylor cannot prove the subjective element of his claim as to any defendant.

## III. Conclusion

Defendants' motion for summary judgment (Doc. No. 26) is **GRANTED**. Judgment shall be entered in favor of defendants Richard Watson, Jack Dinges, David Nichols, Levi Bridges, and Cameron Reid and against plaintiff Antonio Taylor on his due process claim. The Court takes

this opportunity to thank Katharine Aplington, recruited counsel, for her efforts and services to Mr. Taylor.

If plaintiff wishes to appeal, a notice of appeal must be filed within 30 days after entry of judgment. A notice of appeal is timely if it is deposited in a correctional institution's internal mail system on or before the last day for filing. If plaintiff wishes to ask the Court to alter or amend the judgment, that motion is due within 28 days, and there is an exception from the general rule for extending time. Any party wishing to challenge this decision should consult Fed. R. Civ. P. 59, 6; Fed. R. App. P. 4, 12.

**IT IS SO ORDERED.**

**DATED:   March 4, 2016**

>  **s/ Staci M. Yandle**
>  **STACI M. YANDLE**
>  **United States District Judge**